UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DR. GERARD FINKEL, as Chairman of the
Joint Industry Board of Electrical Industry,

            Plaintiff,                      MEMORANDUM AND ORDER
                                                          17-CV-07358

   - against -

WALSH ELECTRICAL CONTRACTING, INC.,
RYAN WALSH, LINDA WALSH,
EMPIRE OUTLET BUILDERS, LLC,
BFC PARTNERS, L.P.,
AURORA CONTRACTORS, INC., and
ADCO ELECTRICAL CORPORATION

            Defendants.
-----------------------------------------------------------x
GLASSER, Senior United States District Judge:

        Plaintiff Dr. Gerard Finkel ("Plaintiff" or "Finkel") brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA") against Defendants Walsh Electrical Contracting, Inc. ("Walsh"), Ryan Walsh, Linda Walsh, Aurora Contractors, Inc. ("Aurora"), and ADCO Electrical Corporation ("ADCO") alleging that they failed to make employer contributions to various ERISA plans. (ECF No. 1, "Compl."). Pending before the Court is Aurora's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 38). For the reasons explained below, Aurora's motion is **DENIED**.

## BACKGROUND

    Plaintiff is the Chairman of the Joint Industry Board of the Electrical Industry (the "Board"), which is the administrator and fiduciary of various ERISA plans that were established and are maintained pursuant to a collective bargaining agreement between a local union and certain

1

employers. (Compl. ¶¶ 5-6). Walsh and ADCO are signatories to that agreement and are employers in the electrical contracting business. (*Id.* at ¶¶ 14, 20). Aurora is not a signatory to the agreement, but is engaged in the construction contracting business. (*Id.* at ¶ 19).

In early 2017, Aurora entered into a construction contract for a project at a FedEx facility in Maspeth, New York ("FedEx Project"), and retained Walsh as its subcontractor to perform the electrical work. (Reilly Affidavit, ECF No. 38-2, at ¶¶ 2-3). Shortly after the project began, Walsh became delinquent on some of its required employer contributions to the various ERISA plans. (Compl. ¶¶ 35-47). On or about May 12, 2017, Walsh advised the Board of its desire to assign part of its role in the FedEx Project to ADCO, knowing that it could continue to employ union workers on that project only if its delinquent benefit contributions for those workers were fully paid or guaranteed by ADCO or Aurora. (*Id.* at ¶ 77-78).

On May 16, 2017, Aurora sent a letter to the Board, providing the following:

As follow up to discussions this morning let this confirm to the Joint Industry Board of the Electrical Industry that Aurora Contractors, Inc. (ACI) is willing to guarantee payment to the Joint Industry Board for *all wages and benefits for labor supplied to the FedEx Ground (FXG), above referenced project, provided through Walsh Electrical Contracting, Inc. (Walsh) for which Walsh owes but fails to pay to the Joint Industry Board.*

This guarantee is being provided with the understanding that this will permit ACI and Walsh to work with ADCO Electrical Corporation (ADCO) to provide supplemental labor on this project through its completion.

(*See* Exhibit B, ECF No. 38-4) (emphasis added). Aurora also requested "an accounting of any wages or benefits that are currently due for Walsh labor on this project so we can work with Walsh to get those wages and/or benefits up to date at this time." (*See* Exhibit C). The next day, Aurora wrote that it "has committed to payments of wages and benefits for Walsh's labor in the event they are not paid by Walsh." (Compl. ¶ 82). As a result, electrical work on the FedEx Project continued without disruption.

On August 24, 2017, the Board demanded payment in the amount of $852,055.13 from Aurora, which represented the delinquent contributions by Walsh for the work performed on the project prior to their assignment to ADCO. (*Id.* at ¶ 95). Aurora refused to pay for any contributions that were delinquent prior to its May 16, 2017 letter. (*Id.* at ¶ 96).

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a "defendant's Rule 12(b)(1) motion to dismiss, . . . [t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Tranp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Id.* (internal quotation omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the non-moving party's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007). But the Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

## DISCUSSION

**I.       The Court Has Subject Matter Jurisdiction over the Aurora Claim**

Plaintiff's sixth cause of action alleges a breach of Aurora's guarantee to pay any unpaid wages and benefits owed by Walsh for the FedEx Project. Aurora argues that the Court lacks subject matter jurisdiction over Plaintiff's claim under 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." More specifically, Aurora argues that the claim does not derive from "a common nucleus of operative fact" because (1) the Complaint involves at least two other projects outside of the FedEx Project, (2) the Aurora claim focuses on the time period governed by Aurora's guarantee, not the collective bargaining agreement, and (3) the wages and benefits owed by Walsh in connection with the FedEx Project constitute less than half of the wages and benefits owed by Walsh overall. (ECF No. 38-8 at 5-6). All three arguments are meritless.

Plaintiff argues that the common nucleus of operative fact consists of the FedEx Project and Walsh's failure to pay its required contributions. (ECF No. 56 at 6). The Court agrees. Plaintiff brought this action against Walsh and others for failure to remit contributions in relation to various projects, including the FedEx Project. Aurora guaranteed payment for that project in place of Walsh. Indeed, Aurora admits that "a portion of the Federal Law Claims may share some facts with the Aurora claim." (ECF No. 38-8 at 5). Accordingly, the claims arise out of "a common nucleus of operative fact," and the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

Aurora further argues that even if the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a), the Court should decline to exercise it pursuant to 28 U.S.C. § 1367(c) due to

"exceptional circumstances." (ECF No. 38-8 at 7). It claims that "there is no relationship between the FedEx Project underlying the Aurora claim and the project(s) underlying the Federal Law Claims." (*Id.* at 7-8). That argument is meritless for the reasons stated above and the Court will not decline to exercise supplemental jurisdiction.

## II. Plaintiff Stated A Plausible Claim Against Aurora

Aurora also argues that Plaintiff's claim should be dismissed to the extent it seeks wages and benefits for the period prior to its May 16, 2017 letter. The Court disagrees. Aurora clearly agreed to pay for all wages and benefits related to the FedEx Project, which began prior to May 16, 2017, when it guaranteed "*all wages and benefits for labor supplied to the FedEx Ground . . . for which Walsh owes but fails to pay to the Joint Industry Board.*" (*See* Exhibit B). What is more, Aurora requested "an accounting of any wages or benefits that are *currently due* for Walsh labor on this project so we can work with Walsh to get those wages and/or benefits *up to date at this time*." (*See* Exhibit C). Asking for amounts due as of May 16, 2017 so that Aurora can make sure wages and benefits are "up to date" necessarily requires payment of wages and benefits that were due prior to that date. To the extent Plaintiff is seeking "Additional Claim Amounts," if those amounts are considered "wages and benefits," Aurora's guarantee covers those too.

## CONCLUSION

Accordingly, for the reasons set forth above, Aurora's motion to dismiss is **DENIED**.

SO ORDERED.

Dated:      Brooklyn, New York
            February 15, 2019

                                                         /s/
                                                         I. Leo Glasser                    U.S.D.J.